**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KENNETH FORTUNE,** | : |
| **Plaintiff** | : |
| | : CIVIL NO. 3:CV-01-0111 |
| vs. | : |
| | : (CHIEF JUDGE VANASKIE) |
| **ROBERT S. BITNER, et al.,** | : |
| **Defendants** | : |

**M E M O R A N D U M**

**I.   Introduction**

This matter comes before the Court on a motion labeled by the *pro se* Plaintiff as seeking a "protective order." (Dkt. Entry 247.)  Plaintiff alleges that Department of Corrections ("DOC") staff at his present facility, SCI-Greene, "are behind schemes to make it appear that Plaintiff is attempting to harm staff or injure an officer" in order to hinder his ability to pursue this litigation. (Id at ¶ 5.)  Fortune seeks judicial intervention to protect "his legal materials that are threaten[ed] by staff schemes and plots to set Plaintiff up."  (Id. at ¶ 6.)

The relief Plaintiff is in the nature of interim injunctive relief, and thus the motion will be addressed in the context of the principles governing motions for a preliminary injunction or a temporary restraining order.  For the following reasons the motion will be denied.

**II.   Background.**

Plaintiff is currently housed as SCI-Greene.  The events charged in the Third

Amended Complaint in this matter transpired at SCI-Huntingdon.

On March 23, 2005, Plaintiff's cell at SCI-Greene was searched by security staff after they allegedly received an inmate request slip suggesting that Fortune was planning on stabbing a staff member. (Dkt. Entry 252, Plaintiff's Declaration in Support of his Motion for a Protective Order.) On April 6, 2005, Plaintiff was called to the Security Office and shown a request slip with his name and institutional number on it, "threatening to 'slap a[n] unnamed mailroom worker if they do not stop messing with Plaintiff['s] legal mail.'" (Id.) Fortune states that he does "not have any conflicts . . . at his current facility. (Dkt. Entry 252, Fortune's Declaration at ¶ 6.) He asserts that it is a "well known custom and practice" at SCI-Greene to have employees use other prisoners "to set up other inmates who are litigating civil suit[s] against prison officials." (Id. at ¶ 6.) He seeks "a Protective Order because the only ones who [would] be motivated to set Plaintiff up in such a fashion are" the SCI-Greene officials Fortune requested to include in this action in October of 2004, but was denied. (Id. at ¶ 5.)

## III.     Discussion

Preliminary injunctive relief is extraordinary in nature, and lies within the discretion of the trial judge. New Dana Perfumes Corp. v. Disney Store, Inc., 131 F. Supp. 2d 616, 626 (M.D. Pa. 2001). To obtain injunctive relief, Plaintiff must establish the following: (1) he will likely suffer irreparable injury without an injunction; and (2) he is reasonably likely to succeed on the merits. Adams v. Freedom Forge Corp., 204 F.3d 475, 484 (3d Cir. 2000).

-2-

"The court may not grant . . . injunctive relief without satisfying these requirements, regardless of what the equities seem to require." Id.  "If these two threshold showings are made the District Court then considers, to the extent relevant," (3) whether the nonmoving party would suffer greater harm than Plaintiff if the injunction were granted; and (4) "whether granting relief would serve the public interest." Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir. 2002).  The burden lies with the moving party to establish every element in its favor, or the grant of a preliminary injunction is inappropriate. P.C. Yonkers Inc. v. Celebrations, 428 F.3d. 504, 508 (3d Cir. 2005).

A court may not grant preliminary injunctive relief unless "[t]he preliminary injunction [is] the only way of protecting the plaintiff from harm." Instant Air Freight v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).  Fortune presumes the request slip threatening staff for the mishandling of his legal mail was authored by SCI-Greene prison staff "for the sole purpose of interfering with Plaintiff's pursuit of his claim with this action and to invade the privilege which 'shelters' the mental process of analyzing and preparing his case." (Dkt. Entry 262, Plaintiff's Reply Brief, p. 3.)  Yet, he does not offer any evidence to suggest that he has suffered any actual harm, *i.e.* the confiscation and or destruction of his legal materials.

While he attempts to demonstrate harm by suggesting staff have withheld discovery materials from him that were forwarded by defense counsel in this matter, his claims are unsupported. (See Dkt. Entry 263, Appendix in Fortune's Reply Brief, Exhibit B,

-3-

Memorandum from Thomas to Fortune, Re: Invoice for Reproduction of Medical Files.)  The document proffered by Fortune suggests that he reviewed his medical records and that he requested copies of various portions of it.  He was charged for these photocopies.  There is no requirement that the DOC provide him with free copies of his medical records.  There "is no provision in the [in forma pauperis] statute for the payment by the government of the costs of deposition transcripts, or any other litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant."  Tabron v. Grace, 6 F.3d 147, 159 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).  There is nothing wrong with withholding copies requested by Fortune until payment is received.  The fact that Fortune selected the documents to be copied confirms that he was given the opportunity to review the documents produced in discovery, nothing more.

      Furthermore, Fortune has not shown any action by a named Defendant that threatens Fortune with irreparable harm.  At most, he asserts non-defendants are attempting to transfer him to the Restricted Housing Unit ("RHU") or another facility.  Neither of these events, if they occurred, would entail depriving Fortune of his legal materials.  Fortune does not suggest that RHU inmates are not permitted to maintain a limited amount of legal materials in their cell or that inmates transferred to a different facility are precluded from taking their legal materials with them.  Neither of the feared events necessarily implies the loss of Fortune's control over his legal materials.  Under these circumstances, Fortune's instant motion for a temporary

restraining order or preliminary injunction will be denied.

An appropriate Order shall follow.

**Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KENNETH FORTUNE,** | : |
| **Plaintiff** | : |
| | : **CIVIL NO. 3:CV-01-0111** |
| vs. | : |
| | : **(CHIEF JUDGE VANASKIE)** |
| **ROBERT S. BITNER, et al.,** | : |
| **Defendants** | : |

# O R D E R

**AND NOW**, this **28th day of MARCH**, **2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion for a Protective Order (Dkt. Entry 247), construed as a Motion for Preliminary Injunction or Temporary Restraining Order, is **DENIED.**

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania