# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KENNETH FORTUNE,** | : |
| **Plaintiff** | : |
| | : **CIVIL NO. 3:CV-01-0111** |
| vs. | : |
| | : **(CHIEF JUDGE VANASKIE)** |
| **ROBERT S. BITNER, et al.,** | : |
| **Defendants** | : |

# M E M O R A N D U M

## I.   Introduction

Presently before the Court is Fortune's Motion to Compel and for Sanctions, Dkt. Entry 245.  The motion seeks an adverse inference instruction as a result of Defendants' failure to produce a complete videotape of his December 28, 1999 cell extraction and the apparent loss of "DC-141 Part IV Reports" from his institutional file.[1]  Additionally, Fortune requests an order compelling a response to an interrogatory regarding discipline issued for the use of Electric Body Immobilizer Devices ("EBID") (e.g. stun guns or stun shields), and production of a transfer petition referenced in a Program Review Committee ("PRC") Report of May 6, 1999.  For the reasons that follow, Fortune's motion will be denied.

---

[1] These reports were to have been prepared at 90-day intervals by the Superintendent of the institution where an inmate is held in Administrative Custody ("AC") and sent to the Regional Deputy Director of the Pennsylvania Department of Corrections ("DOC").

**II.    Discussion**

    **A.  Sanctions for Loss of Evidence**

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Mosaid Techs., Inc. v. Samsung Elecs. Co., Ltd., 348 F. Supp. 2d 332, 335 (D. N.J. 2004). The destruction or loss of evidence may warrant litigation sanctions. In this case, Fortune requests a sanction in the form of an adverse inference instruction, i.e., Defendants' inability to produce certain evidence would permit the fact finder to infer that the information would not have been favorable to the Defendants. Id. at 336. The mere loss of evidence, however, does not warrant a sanction in every case.

The Third Circuit has cautioned that when "determining whether a spoliation inference should be granted, the District Court must examine the following: (1) the degree of fault of the party who altered or destroyed the evidence, (2) the degree of prejudice suffered by the opposing party, and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and serve as a deterrent." Griffith v. Mellon Bank, No. 04-3543, 2006 WL 584240, at *3 (3d Cir. March 10, 2006)(citing Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir.1994). A party seeking a spoliation inference must establish that the evidence in question was under the adverse party's control and that the evidence was destroyed intentionally, and not just lost or accidentally destroyed. Brewer v. Quaker State Oil

Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995). "No adverse inference can be drawn, therefore, from the mere fact of [a party's] inability to produce the records, absent evidence that they were intentionally concealed or destroyed." Harding v. CareerBuilder, LLC, No. 05-1934, 2006 WL 460896 (3d Cir. Feb 27, 2006).

Fortune has not satisfied the requirements for a spoliation inference. First, as to the videotape of the cell extraction, Defendants have acknowledged that the tape originally sent to Fortune was incomplete. In their reply to the instant motion, Defendants represented that a complete copy has been sent to Fortune, and he has not challenged that representation. Thus, there is no basis for imposing any sanction regarding the videotape.[2]

As to the failure to produce the DC-141 Part IV Reports, Defendants have explained that they cannot be located. Fortune had asked Defendant Bell to produce copies of all such reports sent by SCI-Huntingdon's Superintendent to the DOC Regional Deputy Director during Fortune's confinement in Administrative Custody from March 6, 1998 to May 16, 2001. (See Dkt. Entry 164-2, Appendix to Defendants' Brief in Opposition to Motion to Compel

---

[2] Defendants submitted a copy of the videotape in connection with their summary judgment motion. The copy of the videotape submitted to the Court is approximately 18 minutes in length and commences with various officers holding a discussion and then proceeding to Fortune's cell, where he is placed in restraints, his clothing stripped from his body, he is carried from his cell to a shower cell, and he is questioned by a nurse. After a few minutes he is returned to his cell and the restraints are removed. The videotape is consistent with Fortune's general description of the incident.

responses from Defendant Bell.) Fortune, without elaboration, claims that the loss of the DC-141 Part IV Reports materially prejudices his claim against Defendants Bell and Bitner, who have been sued for purportedly ignoring Fortune's complaints about being incarcerated at SCI-Huntingdon in light of the fact that he was supposed to be separated from persons located there.

   Bell has been sued for his denial of Fortune's requests for a "separation transfer." At the time in question, Bell was a Case Specialist in the Bureau of Inmate Services for the DOC. Bitner was Chief Hearing Examiner for the DOC. Fortune has not shown that either Defendant ever had custody of the missing DC-141 Part IV Reports. Nor has he shown that either Defendant ever had any responsibility for maintaining the reports in question. While a principal may suffer the consequences of an agent's loss or destruction of evidence, Fortune has not shown that it would be appropriate to sanction Bell and Bitner for loss of evidence never in their possession and for which they had no responsibility. Nor has Fortune presented any evidence to suggest that the reports were destroyed intentionally to conceal material information. Indeed, he has not shown why the DC-141 Part IV Reports would contain information favorable to his position. For example, he has not shown that reports made every 30 days during his AC confinement (and which were produced) contained information that indicated the need for a separation transfer, thus suggesting that the Superintendent's reports would have made the same point.. Nor has he explained why the information already

-4-

presented in this case is inadequate.

In short, there is neither evidence of culpable conduct attributable to Bell and/or Bitner in connection with the absence of the DC-141 Part IV Reports, nor is there any showing of material prejudice to Fortune's claims by the loss of those documents.  Accordingly, Fortune is not entitled to a spoliation inference at this stage of the case.[3]

### B.     Motion to Compel Additional Discovery

We have previously visited Defendants' response to this interrogatory in addressing an earlier motion to compel, and directed the Defendants in question "to provide a full and complete response to Interrogatory 8 with respect to their actual use of a stun gun or similar device and any disciplinary action that may have occurred as a result of the actual use of such a device." (See Dkt. Entry 229.)  In response to this Court's Order, Defense counsel verified that none of the Defendants (Whitesel, Fogel, Gibson or Weyandt) were ever disciplined for their use of the EBID.  (See Dkt. Entry 257, Appendix to Defendants' Brief in Opposition to Plaintiff's Motion to Compel, Exhibit 1, Letter from Assistant Counsel Dorian to Fortune, dated March 14, 2005.)  Fortune now claims that Defendants misinterpreted this interrogatory to mean that Plaintiff was requesting instances when any of the Defendants in question were disciplined as a result of use an EBID.  He argues that he was really seeking

---

[3] In the event that this case survives the pending summary judgment motion and Fortune presents evidence suggesting the intentional destruction of the DC-141 Part IV Reports, he may renew his request for a spoliation inference.

information concerning misconduct reports issued to any other inmate when an EBID was employed on that inmate. (Dkt. Entry 249 at p. 2.)

Contrary to Fortune's assertion, the interrogatory in question plainly concerned use of an EBID that resulted in disciplinary action against one of the Defendants. Such information may be relevant in this excessive force case. But issuance of a misconduct report to an inmate against whom an EBID had been used by one of the Defendants would have marginal pertinence. In any event, Defendants complied with this Court's Order directing supplementation of the interrogatory in question, and there is no basis for compelling a further supplementation.

Finally, to the extent Fortune attempts to reargue the issue of Defendants' alleged failure to produce an unidentified transfer petition mentioned in a May 6, 1999, PRC report, that issue has been raised and addressed in previous motions to compel. Most recently, in an Order dated March 28, 2006 (Dkt. Entry 301), it was concluded that Defendants had not evaded their discovery obligations in connection with this issue. There is no reason to address this matter once again.

An appropriate Order shall follow.

        **s/ Thomas I. Vanaskie**
        Thomas I. Vanaskie, Chief Judge
        Middle District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KENNETH FORTUNE,** : | |
| : | |
| **Plaintiff** : | |
| : | **CIVIL NO. 3:CV-01-0111** |
| **vs.** : | |
| : | **(CHIEF JUDGE VANASKIE)** |
| **ROBERT S. BITNER, et al.,** : | |
| : | |
| **Defendants** : | |

**O R D E R**

**AND NOW**, this **29th day of MARCH**, **2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Fortune's Motion to Compel and for Sanctions (Dkt. Entry 245) is **DENIED**.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie, Chief Judge
Middle District of Pennsylvania
